# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WHITE WINSTON SELECT ASSET FUNDS, LLC <br><br> Plaintiff, <br><br> v. <br><br> INTERCLOUD SYSTEMS, INC., <br><br> Defendant. | Civil Action No. 3:13-cv-07825-BRM-DEA <br><br><br> **Return Date:  May 15, 2017** <br> **Oral Argument Requested** |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF WHITE WINSTON SELECT ASSET FUNDS,
## LLC'S MOTION FOR A WRIT OF ATTACHMENT

---

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
(973) 624-7070 (Fax)
*Attorneys for Plaintiff,*
*White Winston Select Asset Funds, LLC*

ME1 24661474v.1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .................................................................................................2

ARGUMENT ......................................................................................................................6

I.   White Winston Satisfies the Statutory Standard for Obtaining A Writ of Attachment ................................................................................................................6

II.  A Writ of Attachment is Needed to Give White Winston Security for its Claims ....................................................................................................................12

CONCLUSION .................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Constr. Drilling, Inc. v. Chusid*,
  63 F. Supp. 2d 509 (D.N.J. 1999)..................................................................................7

*Granny Goose Foods, Inc. v. B'hood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*,
  415 U.S. 423 (1974).......................................................................................................6

*In re State Tax on Foreign-Held Bonds*,
  82 U.S. 300 (1872).......................................................................................................11

*Preferred Real Estate Inv., LLC v. Lucent Techs., Inc.*,
  No. 2:07-cv-05374, 2008 WL 2414968 (D.N.J. June 11, 2008) ..........................9

*Sentry Ins. v. Sky Mgmt., Inc.*,
  34 F. Supp. 2d 900 (D.N.J. 1999) ...........................................................................10

*Vital Basics, Inc. v. Vertrue, Inc.*,
  515 F. Supp. 2d 170 (D. Me. 2007) .........................................................................10

*White Winston Select Asset Funds, LLC v. InterCloud Sys., Inc.*,
  No. 3:13-cv-7825, 2014 WL 4105492 (D.N.J. Aug. 19, 2014),
  *rev'd*, 619 F. App'x 157 (3d Cir. 2015)...................................................................3

*White Winston Select Asset Funds, LLC v. InterCloud Sys., Inc.*,
  619 F. App'x 157 (3d Cir. 2015) ...............................................................................3

**STATE CASES**

*1412 Spruce, Inc. v. Comm'r, Pa. Liquor Control Bd.*,
  474 A.2d 280 (Pa. 1984)............................................................................................10

*Allied Fin. Corp. v. Steel Panel Sales Corp.*,
  86 N.J. Super. 65 (App. Div. 1964)...........................................................................7

*Blaustein v. Standard Oil Co.*,
  56 A.2d 772 (Del. Super. Ct. 1947) ..........................................................................8

*Herdman Motor Co. v. State Bd. of Tax Appeals*,
   119 N.J.L. 164 (N.J. Sup. Ct. 1937) ................................................................................... 11

*High v. Padrosa*,
   46 S.E. 859 (Ga. 1904) ....................................................................................................... 11

*Lancashire Ins. Co. v. Corbetts*,
   46 N.E. 631 (Ill. 1897) ........................................................................................................ 11

*Nat'l Fire Ins. Co. of Hartford v. Chambers*,
   53 N.J. Eq. 468 (N.J. Ct. Ch. 1895) .............................................................................. 10, 11

*Papendick v. Bosch*,
   410 A.2d 148 (Del. 1979) ..................................................................................................... 8

*Salyers Auto Co. v. De Vore*,
   217 N.W. 94 (Neb. 1927) .................................................................................................... 11

*Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*,
   880 N.W.2d 16 (Minn. 2016) .............................................................................................. 10

*Tanner Assocs. v. Ciraldo*,
   33 N.J. 51 (N.J. 1960) ........................................................................................................... 7

**STATUTES**

10 Del. C. § 3507 ........................................................................................................................ 8, 9

N.J.S.A. § 2A:26-2 ......................................................................................................................... 7

N.J.S.A. § 2A:26-2(e) ............................................................................................................ 8, 9, 12

N.J.S.A. § 14A:13-2(c) .................................................................................................................. 8

N.J.S.A. § 14A:13-3 ....................................................................................................................... 8

N.J.S.A. § 14A:13-11 ..................................................................................................................... 8

**RULES**

Fed. R. Civ. P. 64(a) ...................................................................................................................... 6

N.J. Rule 4:60-5 ............................................................................................................................. 7

## **PRELIMINARY STATEMENT**

Plaintiff White Winston Select Asset Funds, LLC ("White Winston") brought this litigation in 2014 against Defendant InterCloud Systems, Inc. ("InterCloud") to recover a $500,000 break-up fee due under the provisions of a Term Sheet between the parties. On several occasions during the course of this litigation, InterCloud has stated that it will be unable to satisfy a judgment for the full break-up fee, if one is entered in favor of White Winston. Moreover, InterCloud's filings with the Securities and Exchange Commission ("SEC"), which "raise substantial doubt about its ability to continue as a going concern," further substantiate White Winston's fears that any judgment entered in this case will go unsatisfied. Accordingly, White Winston respectfully moves this Court to issue a writ of attachment against InterCloud.

As explained in greater detail below, White Winston has satisfied all of the elements for a writ of attachment under New Jersey law: a probability that judgment will be rendered in its favor, a statutory basis for issuance of the writ, and the existence of property in New Jersey subject to attachment. Moreover, in light of InterCloud's financial difficulties and repeated assertions that it will not pay any judgment, attachment is necessary to provide White Winston a measure of security to ensure that the break-up fee due under the Term Sheet is paid.

## STATEMENT OF FACTS

After several weeks of negotiation between sophisticated entities, each represented by counsel, Defendant InterCloud executed a term sheet (the "Term Sheet") in July 2013 summarizing the principal terms and conditions of a proposed financing by Plaintiff White Winston. As set forth in the Term Sheet, the proposed financing was to be secured by a security interest in InterCloud's assets, junior in priority only to a security interest held by another InterCloud creditor, MidMarket Capital Partners, LLC ("MidMarket"). In the Term Sheet, InterCloud agreed to pay White Winston a break-up fee if White Winston was prepared to close the proposed financing on substantially the same terms and conditions as set forth in the Term Sheet, but InterCloud failed to close because it had arranged financing from another lender during the term of the Term Sheet or within 45 days from its termination.

White Winston remained willing to proceed with the proposed financing on the terms set forth in the Term Sheet at all relevant times. However, in September 2013, while White Winston was conducting due diligence and preparing closing documents for the proposed financing, InterCloud closed on an agreement with PNC Bank, N.A. ("PNC") for a revolving credit facility of up to $10,000,000, secured by a first priority security interest in InterCloud's assets. At the same time, InterCloud amended its loan agreement with MidMarket to give MidMarket a

second priority lien junior to PNC. These actions made it impossible for InterCloud to provide White Winston the second priority security interest specified in the Term Sheet—and thus for the parties to close the proposed financing on substantially the same terms and conditions as set forth in the Term Sheet.

On December 24, 2013, White Winston filed this action asserting claims of breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel and seeking (i) the $500,000 break-up fee in accordance with § 17(d) and (ii) reimbursement of expenses and attorneys' fees pursuant to § 18 of the Term Sheet.  InterCloud moved to dismiss the complaint, and, on August 19, 2014, Judge Wolfson granted InterCloud's motion. *See White Winston Select Asset Funds, LLC v. InterCloud Sys., Inc.*, No. 3:13-cv-7825, 2014 WL 4105492, *7 (D.N.J. Aug. 19, 2014) (hereinafter *White Winston I*), *reversed*, 619 F. App'x 157 (3d Cir. 2015) (hereinafter *White Winston II*).  On appeal, the United States Court of Appeals for the Third Circuit reversed the District Court's dismissal. *White Winston II*, 619 F. App'x at 160.

On June 1, 2016, while discovery was proceeding, Todd Enright, a partner at White Winston, met with Lawrence Sands, Senior Vice President at InterCloud and a former practicing lawyer, to explore the possibility of resolving this case. *See* Enright Cert. ¶ 2.  The parties did not reach agreement as to a settlement amount. *Id.* ¶ 3.  During the meeting, Mr. Sands informed Mr. Enright that White Winston

3

would not recover on any judgment it might obtain because of InterCloud's financial condition and existing debt. *Id.* Subsequently, on March 6, 2017, White Winston and InterCloud attended a mediation before Magistrate Judge Arpert. *Id.* ¶ 4. The mediation quickly reached an impasse when InterCloud reiterated that it would be unable to pay a full judgment. *Id.* ¶ 7.

InterCloud's SEC filings confirm that the company is in financial trouble. According to InterCloud's Form 10-K for the year ending December 31, 2016, InterCloud "incurred losses from operations of $18.6 million and $25.9 million" in 2015 and 2016, respectively. Gabriel Cert., Ex. A (2016 Form 10-K for InterCloud Systems, Inc.) at 8. Furthermore, InterCloud's management "believe[s] that our available cash balance as of [March 14, 2017] will not be sufficient to fund our anticipated level of operations for at least the next 12 months." *Id.* at 49. The auditor's statement attached to the Form 10-K paints a bleak picture of InterCloud's prospects:

> The accompanying consolidated financial statements have been prepared assuming that the Company will continue as a going concern. As discussed in Note 2 to the consolidated financial statements, the Company has suffered recurring losses from operations, has violated loan covenants, had events of default, has a working capital deficiency and an accumulated deficit, and has significant outstanding debt obligations that raise substantial doubt about its ability to continue as a going concern.

4

*Id.* at F-2.  Yet, despite the grim financial data in InterCloud's Form 10-K—and its repeated representations that it would be unable to pay a judgment in this case—InterCloud omitted this case from a list of "material litigation" pending against it. *Id.* at 28-29.

Roughly a week before the March 2017 mediation, however, InterCloud sold one of its subsidiaries, ADEX Corporation, to HWN, Inc., for a purchase price of $4 million plus a working capital adjustment. *See* Gabriel Cert., Ex. B (InterCloud Systems, Inc. Form 8-K dated March 1, 2017). The working capital adjustment is expected to be $900,000 and is to be paid in August 2017. *Id.* In the Asset Purchase Agreement for the ADEX sale, InterCloud made the following representations concerning the solvency of both it and ADEX Corp.:

> Seller hereby warrants and represents that neither its execution of this Agreement nor consummation of the transactions contemplated by this Agreement shall constitute a fraudulent transfer of Seller's property, as defined in the Uniform Fraudulent Transfer Act, as promulgated in the State of Illinois at 740 ILCS 160/1, et seq., as may be amended or supplemented from time to time (the "Act"). In this regard, Seller specifically warrants and represents that:
>
> (a)  Seller has been for the one (1) year period ending on the date of this Agreement, and is on the date of this Agreement, solvent;
>
> (b)  Seller will not be made insolvent by its execution of this Agreement or its consummation of the transactions contemplated by this Agreement;

5

    (c)    Purchaser has given Seller, and Seller has received, property of a present value reasonably equivalent to the value of the present property transferred to Purchaser; and

    (d)    The transfers of property contemplated in this Agreement, individually and collectively, are not fraudulent as to any one or more of Seller's creditors, regardless of whether the claims of such creditors arose before or arise after the consummation of such transfers.

*See* Gabriel Cert., Ex. C (Asset Purchase Agreement By and Among HWN, Inc., ADEX Corp., and InterCloud Systems, Inc. dated February 28, 2017) (hereinafter "Asset Purchase Agreement") § 4.11. White Winston did not learn of the ADEX sale until after the mediation.

## ARGUMENT

### I. White Winston Satisfies the Statutory Standard for Obtaining A Writ of Attachment

Federal Rule of Civil Procedure 64, which governs prejudgment remedies, provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." *See* Fed. R. Civ. P. 64(a). Under Rule 64, "state law is incorporated to determine the availability of prejudgment remedies for the seizure of person or property to secure satisfaction of the judgment ultimately entered." *Granny Goose Foods, Inc. v. B'hood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 436 n.10 (1974).

Under New Jersey court rules, a plaintiff seeking prejudgment attachment must establish that "(1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment." R. 4:60-5.  White Winston easily satisfies each of those requirements here.

*Probability of success*: To demonstrate the requisite probability of success, a plaintiff need only establish that it has a *prima facie* cause of action.  *See Allied Fin. Corp. v. Steel Panel Sales Corp.*, 86 N.J. Super. 65, 78 (App. Div. 1964); *see also Tanner Assocs. v. Ciraldo*, 33 N.J. 51, 62-63 (N.J. 1960); *Constr. Drilling, Inc. v. Chusid*, 63 F. Supp. 2d 509, 512 (D.N.J. 1999) ("In order to warrant the attachment remedy, the plaintiffs are required to present only a prima facie case that a contractual relationship existed between themselves and the defendants."). As set forth in detail in the Memorandum of Law in Support of White Winston's Motion for Summary Judgment, *see* ECF No. 42-2, White Winston has not only made a *prima facie* case that InterCloud breached the Term Sheet and that White Winston is entitled to the break-up fee, it has established the elements of its contract claim as a matter of law.

*Statutory grounds for attachment*: The Statutory grounds for prejudgment attachment are set forth in N.J.S.A. § 2A:26-2.  That statute provides, in relevant

7

part, that "an attachment may issue out of the Superior Court upon the application of any resident or nonresident plaintiff against the property, real and personal, of any defendant . . . [w]here the defendant is a corporation created by the laws of another state but authorized to do business in this State and such other state authorizes attachments against New Jersey corporations authorized to do business in that state." N.J.S.A. § 2A:26-2(e).

Defendant InterCloud is a Delaware Corporation which transacts business, including maintaining its principal place of business, in New Jersey.[1]  Delaware law provides that "[a] writ of foreign attachment may be issued against any corporation, aggregate or sole, not created by or existing under the laws of this State upon proof satisfactory to the court that the defendant is a corporation not created by, or existing under the laws of this State, and that the plaintiff has a good cause of action against the defendant in an amount exceeding $ 50."  10 Del. C. § 3507. Courts in Delaware have routinely allowed Delaware parties to use this provision of the code to attach the property of non-Delaware defendant corporations.  *See e.g.*, *Papendick v. Bosch*, 410 A.2d 148, 152 (Del. 1979); *Blaustein v. Standard Oil Co.*,

---

[1]   InterCloud applied for a certificate of authority to transact business in New Jersey in 2014, but the New Jersey Secretary of State declined to issue a certificate and expunged InterCloud's application because InterCloud failed to pay a correction fee.  *See* Gabriel Cert., Ex. D.  InterCloud's failure to obtain a certificate of authority as required by N.J.S.A. §§ 14A:13-3 and 14A:13-11, does not immunize it from attachment.  Pursuant to N.J.S.A. § 14A:13-2(c), "[a] foreign corporation which transacts business in this State without a certificate of authority under this act shall be subject to the same duties, restrictions, penalties and liabilities now or hereafter imposed upon a foreign corporation procuring such certificate of authority."

8

56 A.2d 772 (Del. Super. Ct. 1947).  Likewise, courts in this district have recognized that property of a Delaware corporation located in New Jersey is subject to attachment pursuant to N.J.S.A. § 2A:26-2(e) and 10 Del. C. § 3507.  *See Preferred Real Estate Inv., LLC v. Lucent Techs., Inc.*, No. 2:07-cv-05374, 2008 WL 2414968, at *2 (D.N.J. June 11, 2008) (observing that statutory grounds for attachment of property held by Lucent Technologies, Inc. and a related LLC was proper because the defendant entities were organized under Delaware law and Delaware has a "reciprocal statute that allows for attachment against any corporation not created by or existing under the laws of the state of Delaware" (citing 10 Del. C. § 3507)).

*Property Located in New Jersey*:  Finally, InterCloud has property located in New Jersey, specifically, its entitlement to receive the working capital adjustment pursuant to its Asset Purchase Agreement with HWN, Inc.  Specifically, § 1.5 of the Asset Purchase Agreement gives InterCloud the right to "the Adjusted Net Working Capital Amount" ("Adjusted Amount") as a part of the purchase price.  Payment of the Adjusted Amount is due "[w]ithin five (5) Business Days following the date on which the calculation of the [Adjusted Amount] become [sic] final and binding pursuant to this Agreement."  Asset Purchase Agreement § 1.5(e).  The process of calculating the Adjusted Amount begins "Six (6) months following the Closing Date" of the Agreement and should be substantially

9

complete within 60 days. *See id.* § 1.5(d). In the Form 8-K it filed with the SEC following the ADEX sale, InterCloud indicated that it expects to receive a $900,000 payment pursuant to § 1.5 of the Asset Purchase Agreement "in August 2017." *See* Gabriel Cert., Ex. B (Form 8-K).

InterCloud's right to receive the Adjusted Amount constitutes property "subject to attachment" pursuant to Rule 4:60-5. Intangible personal property, such as choses in action, are subject to attachment under New Jersey law. *See Sentry Ins. v. Sky Mgmt., Inc.*, 34 F. Supp. 2d 900, 903 (D.N.J. 1999); *Nat'l Fire Ins. Co. of Hartford v. Chambers*, 53 N.J. Eq. 468, 483–84 (N.J. Ct. Ch. 1895). Other jurisdictions uniformly recognize that intangible property may be attached by creditors. *See, e.g.*, *Sprinkler Warehouse, Inc. v. Systematic Rain, Inc.*, 880 N.W.2d 16, 18 (Minn. 2016) (holding that a domain name is intangible personal property subject to garnishment under Minnesota law); *Vital Basics, Inc. v. Vertrue, Inc.*, 515 F. Supp. 2d 170, 173 (D. Me. 2007) ("Accounts receivable are subject to attachment."); *1412 Spruce, Inc. v. Comm'r, Pa. Liquor Control Bd.*, 474 A.2d 280, 283 (Pa. 1984) (observing that, although liquor license is a "personal privilege" and not property subject to attachment, attachment and execution on "the tangible or intangible assets of the business, e.g., the good will of the business," is permissible).

Moreover, InterCloud's right to payment of the Adjusted Amount also constitutes property "locat[ed] within this State." The well-established common-law rule is that, for purposes of attachment, the "situs" of a debt is at the domicile of the creditor. *See Nat'l Fire Ins. Co.*, 32 A. at 672; *In re State Tax on Foreign-Held Bonds*, 82 U.S. 300, 324 (1872); *Salyers Auto Co. v. De Vore*, 217 N.W. 94, 96 (Neb. 1927) ("The general rule is well settled that the situs of debts and obligations is at the domicile of the creditor."); *High v. Padrosa*, 46 S.E. 859, 860 (Ga. 1904) (stating "the rule that the residence of the creditor fixes the situs of the debt"); *Lancashire Ins. Co. v. Corbetts*, 46 N.E. 631, 632 (Ill. 1897) ("[I]t is the generally accepted doctrine that, so far as so intangible a thing as a debt can be held to have a situs, it follows the creditor, or owner of the credit, and is at his domicile."). In this context, the domicile of InterCloud, a corporation, is considered to be its principal place of business. *See Herdman Motor Co. v. State Bd. of Tax Appeals*, 119 N.J.L. 164, 167 (N.J. Sup. Ct. 1937). Because InterCloud's principal place of business is located in Shrewsbury, New Jersey, its right to receive payment of the Adjusted Net Working Capital Amount pursuant to the Asset Purchase Agreement is located within this state and therefore subject to attachment.

11

## II. A Writ of Attachment is Needed to Give White Winston Security for its Claims

Although N.J.S.A. § 2A:26-2(e) does not require White Winston to demonstrate compelling circumstances to justify an attachment, such circumstances unquestionably exist here. In particular, White Winston needs security in the form of an attachment because there is a reasonable possibility that InterCloud will not be able to satisfy a judgment in favor of White Winston absent such an attachment. Indeed, InterCloud has said as much itself on two separate occasions. *See* Enright Cert. ¶¶ 3, 7.

InterCloud's own SEC filings cast further doubt on its ability to pay any judgment. Although it made representations of its solvency in the Asset Purchase Agreement, and has failed to disclose this litigation in its SEC filings, InterCloud's auditors have raised "substantial doubt about its ability to continue as a going concern," citing "recurring losses from operations, violat[ions of] loan covenants, . . . events of default, . . . a working capital deficiency and an accumulated deficit, and . . . significant outstanding debt obligations." Gabriel Cert., Ex. A (Form 10-K) at F-2. Thus, in light of InterCloud's current financial situation, White Winston is entitled to the requested measure of security to ensure that its claims against InterCloud are satisfied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff White Winston Select Asset Funds, LLC respectfully requests that this Court grant White Winston's Motion for a Writ of Attachment.

Respectfully submitted,

**McCARTER & ENGLISH, LLP**

BY:   s/ Mary Gabriel
    Mary Gabriel (No. 037942005)
    Four Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102
    (973) 622-4444

    *Attorneys for Plaintiff,*
    *White Winston Select Asset Funds, Inc.*

DATED:  April 21, 2017